# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| JOSEPH JOHNSON, | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-18-3131 |
| | * | |
| WARDEN CASEY CAMPBELL, *et al.* | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

*Pro se* Plaintiff Joseph Johnson, who was previously incarcerated at Jessup Correctional Institution ("JCI") in Jessup, Maryland, filed this civil action pursuant to 42 U.S.C. § 1983. ECF No. 1. He alleges that he was injured by a metal object protruding from the floor of his cell at JCI, that Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS") and JCI Warden Casey Campbell (collectively, the "Correctional Defendants") negligently failed to repair his cell prior to the injury, and that Defendant Wexford Health Sources, Inc. ("Wexford"),[1] the contracted medical provider at JCI, failed to provide adequate medical care following the injury. *Id.* Pending before the Court are Defendant Wexford's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 11, Correctional Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 18, and Plaintiff's Motion to Appoint Counsel, ECF No. 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). Defendant Wexford's Motion, construed as a Motion for Summary Judgment, is granted,

---

[1] The Clerk shall be directed to amend the docket to reflect the correct name of Defendant Wexford Health Sources, Inc.

1

Correctional Defendants' Motion, construed as a Motion to Dismiss, is granted, and Plaintiff's Motion to Appoint Counsel is denied.

I.  **BACKGROUND**

   **A. Factual Background**

Prior to the injury at issue in this case, Plaintiff suffered a gunshot wound that required surgery to place numerous pins and screws in his body. ECF No. 1 at 4.[2] On July 4, 2015, Plaintiff injured himself on a metal object protruding from the floor of his cell at JCI, which affected the placement of the pins and screws in his left leg. *Id.* On the same day, after complaining of resulting knee pain, Plaintiff was seen in the medical unit. ECF No. 11-3. A physical examination revealed normal respiratory and cardiovascular systems, full range of motion on the right knee and both feet, and moderate pain with motion on the left knee. *Id.* Plaintiff was given a seven-day prescription for Robaxin for pain management, and he was directed to follow up in seven days. *Id.*

On July 29, 2015, Plaintiff returned to the medical unit, where medical staff noted that Johnson had been seen several times for pain in his left knee. ECF No. 11-4. At that time, his prescription for Baclofen was renewed, and it was noted that his prescriptions for Mobic and Neurontin were active until September 10, 2015. *Id.* Plaintiff was also referred to a provider for pain management. *Id.*

On August 7, 2015, Plaintiff fell while in the shower. ECF No. 1 at 5. He claims that the fall was caused by a defective cane that was issued to him by the medical department. *Id.* In the months that followed, Plaintiff claims that JCI's medical staff failed to follow through with scheduled appointments, failed to schedule follow-up appointments with offsite medical

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

providers, and failed to order refills for his medications, which caused him unnecessary pain. *Id.* at 5, 7–8.

On August 18, 2015, Plaintiff was seen by Lawrence A. Manning, M.D. for an orthopedic consultation. ECF No. 11-5. Dr. Manning noted that following Plaintiff's injury in his cell, x-rays were taken of his knee, Plaintiff was given a cane, and he was referred to physical therapy for knee strengthening. *Id.*; ECF No. 11-6 ¶ 3. On October 9, 2015, Plaintiff again complained of pain related to the injury in his cell. ECF No. 11-7. Following an examination, the medical provider stated that the pain Plaintiff was reporting was inconsistent with the provider's physical findings. *Id.* Plaintiff was directed to continue his pain management regimen and he was assigned to a handicap shower for three months. *Id.* On November 9, 2015, Plaintiff reported that his current pain medication was ineffective, so his prescription for Neurontin was increased from 400 milligrams to 600 milligrams, three times a day. ECF No. 11-8.

On November 17, 2015, Plaintiff had a telemedicine evaluation with orthopedic surgeon Dr. Krishnaswamy. ECF No. 11-9. At that time, Dr. Krishnaswamy reviewed the x-ray results and planned to remove two loose screws in Plaintiff's knee because they did not serve any purpose. *Id.* On January 21, 2016, Johnson was seen by JCI medical staff for a follow-up appointment after an offsite visit to Bon Secours Hospital, where Dr. Krishnaswamy had removed the screws from Plaintiff's left distal femur. ECF No. 11-10. During that visit, Plaintiff reported that the procedure went well. *Id.*

On January 27, 2016, Plaintiff reported to the medical unit complaining of throbbing pain. ECF No. 11-11. He reported limited range of motion but stood without assistance and straightened his knee when he was asked to walk. *Id.* Plaintiff was counseled extensively about exercises that the orthopedist instructed him to perform. *Id.*

On May 10, 2016, Plaintiff had another telemedicine evaluation with Dr. Krishnaswamy. ECF No. 11-12. At that time, Plaintiff said that he had reduced left knee pain since the removal of the screws, that he was able to walk unlike before, and that he could bend and fully extend his knee. *Id.* Dr. Krishnaswamy advised Plaintiff to return to the office for a full examination assessment and plan. *Id.* On July 14, 2016, Plaintiff presented to the medical unit with knee pain. ECF No. 22-1 at 1. The provider noted that Plaintiff had been seen by Dr. Krishnaswamy on July 6, 2016, at which time x-rays were taken and an MRI was recommended. *Id.* Plaintiff was directed to continue his medications and to wait for MRI approval. *Id.*

On September 1, 2016, Plaintiff had new onset knee pain after falling on August 26, 2016 while walking through the metal detector at the medical building. *Id.* at 2. He reported that physical therapy helped to reduce the pain. *Id.* On November 1, 2016, Johnson had an onsite visit with Dr. Manning, who noted that an MRI of the left knee was done at Bon Secours Hospital, but he had not received the results. *Id.* at 3. Dr. Manning directed medical staff to allow Plaintiff to follow up with Dr. Krishnaswamy to review the MRI findings. *Id.* Later that month, on November 28, 2016, Plaintiff returned to the medical unit with complaints of ongoing left knee and thigh pain. *Id.* at 4. He was advised to follow up with the chronic care clinic for further pain management and to await the referral to the orthopedist. *Id.*

On January 4, 2017, Plaintiff had a consultation with Dr. Krishnaswamy, who was still awaiting the MRI of the left knee. *Id.* at 5. Dr. Krishnaswamy advised Plaintiff to get the MRI as soon as possible and that he anticipated the need for arthroscopy thereafter. *Id.* On April 5, 2017, Plaintiff returned to visit Dr. Krishnaswamy to review the results of his MRI. *Id.* at 6. Dr. Krishnaswamy stated that the MRI showed "some chondral damage, but no meniscus tears," and

he advised that Plaintiff would benefit from arthroscopy of the left knee, to be performed as soon as authorization was obtained. *Id.*

On May 10, 2017, Johnson had a follow-up visit at the JCI medical unit after returning from the University of Maryland Medical Center, where he was evaluated and treated for weakness of his right leg. ECF No. 11-13. An MRI of the thoracic and lumbar spine was done which showed no abnormality. *Id.* Johnson reported no complaints to the JCI medical staff, which noted that his right leg weakness was resolved. *Id.* On June 20, 2017, Dr. Krishnaswamy performed the arthroscopy, which Plaintiff "tolerated well." ECF No. 22-1 at 8.

On June 22, 2017, Plaintiff was seen at the JCI medical unit complaining of pain. ECF No. 11-14. The provider noted that although Plaintiff had a history of drug use, his pain "appear[ed] to be a legitimate reason to provide a temporary small increase in pain med[ication] for pain relief." *Id.* Therefore, a prescription for Percocet 5 milligrams was ordered, effective until July 6, 2017. *Id.* On July 1, 2017, Johnson reported to the medical unit for a sick call visit, stating that the pain medication did not give him any relief. ECF No. 22-1 at 12. The medical staff resubmitted Plaintiff's requests for physical therapy and an orthopedic follow-up with Dr. Krishnaswamy, and the staff directed Plaintiff to follow up at the next chronic care clinic regarding pain management. *Id.* On July 6, 2017, Plaintiff stated that he never received his Percocet, and he was told that it had not yet been approved. *Id.*

On July 18, 2017, Plaintiff had a follow-up appointment with Dr. Krishnaswamy, who stated, upon examination, that the surgical wound had healed well. *Id.* at 14. Dr. Krishnaswamy removed the sutures and approved Plaintiff for physical therapy. *Id.* Later that day, Plaintiff reported to the JCI medical unit with pain in his knee and stated that he had received the Percocet, which seemed to be helping. *Id.* at 15.

5

On November 7, 2017, Plaintiff returned to the medical unit for complaints regarding knee pain. ECF No. 11-15. His prescription for Neurontin had been discontinued, and he stated that Mobic did not keep his pain under control. *Id.* Plaintiff was prescribed Baclofen. *Id.* On November 29, 2017, Plaintiff reported to the medical unit in a wheelchair with complaints of knee pain. ECF No. 11-16. His prescription for Baclofen was continued and an order for 10 milligrams of Nubain was placed. *Id.*

On April 1, 2018, Plaintiff returned to the medical unit seeking pain medication for his knee pain. ECF No. 11-17. The staff informed him that his MRI was negative for MS and instructed him to attend physical therapy. *Id.* At that time, Plaintiff was observed standing and walking several steps with a cane. *Id.* On June 6, 2018, Plaintiff requested a second opinion for his knee pain, stating that he continued to have persistent pain in his left leg despite having two surgeries performed by Dr. Krishnaswamy. ECF No. 11-18. He stated that the Nubain injection was the only medicine that gave him relief. *Id.* After reviewing his record, the medical staff noted that Plaintiff had a consult for orthopedics and a referral for physical therapy. *Id.* Plaintiff was advised to continue physical therapy, add Tylenol for breakthrough pain, and that, if he felt no relief after physical therapy, a referral for pain management would be made at that time. *Id.*

### B. Procedural Background

On October 10, 2018, Plaintiff filed a Complaint against Defendants alleging that Correctional Defendants were negligent for failing to repair Plaintiff's cell before his injury and that Defendant Wexford provided him with inadequate medical care by failing to provide Plaintiff with adequate medical appointments or sufficient medication, giving him a defective cane, and not appropriately training its medical staff. ECF No. 1. On March 12, 2019, Defendant Wexford filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF

No. 11. On March 20, 2019, the Court ordered Plaintiff to respond to Defendant Wexford's Motion. ECF No. 12. On May 6, 2019, Plaintiff filed a Motion for a More Definite Statement in which he stated that he had not received Defendant Wexford's Motion. ECF No. 15. On May 22, 2019, Defendant Wexford filed a response stating that it had twice mailed Plaintiff a copy of the Motion. ECF No. 17. On July 8, 2019, Correctional Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 18. On July 24, 2019, the Court ordered Plaintiff to respond to the Motion. ECF No. 19. On December 26, 2019, Plaintiff filed a response to both Motions filed by Defendants and a Motion to Appoint Counsel, ECF No. 21, and on February 28, 2020, he filed a Supplemental Complaint, ECF No. 22. On March 6, 2020, Defendant Wexford filed a response to the Supplemental Complaint, ECF No. 23, to which Plaintiff filed a reply on March 19, 2020, ECF No. 24.

## II. MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motions are styled as Motions to Dismiss or, in the Alternative, Motion for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential

to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

### B. Discussion

The Court shall construe Correctional Defendants' Motion as a Motion to Dismiss. The Court will construe Defendant Wexford's Motion as a Motion for Summary Judgment because Plaintiff and Defendant have submitted evidence outside of the Complaint regarding Plaintiff's medical care claims. *See* Fed. R. Civ. P. 12(d).

#### i. Correctional Defendants' Motion to Dismiss

Plaintiff alleges that Correctional Defendants failed to repair the protruding metal screws in Plaintiff's cell at JCI prior to his injury on July 4, 2015. Correctional Defendants contend that this claim is time-barred. Section 1983 does not contain its own statute of limitations; rather, it is well-settled that the limitations period for § 1983 claims is to be determined by the statute of limitations for personal injury actions under state law. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Maryland, the applicable statute of limitations is three years from the date of accrual. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101.

The three-year limitations period may be tolled for equitable reasons, but only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). "[A] litigant seeking equitable tolling bears the burden of

10

establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. ) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). Under Maryland law, the statute of limitations is strictly construed. "Absent legislative creation of an exception to the statute of limitations, we will not allow any 'implied and equitable exception to be engrafted upon it.'" *Hecht v. Resolution Tr. Corp.*, 333 Md. 324, 333 (1994) (quoting *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623 (1985)).

Although the state statute of limitations applies, the question of when a cause of action has accrued under § 1983 is a federal question. *See Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id*. (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)). Under the prison mailbox rule, an action under § 1983 is commenced for the purpose of meeting the statute of limitations when the complaint is delivered to prison staff for mailing and is no longer under the plaintiff's dominion and control. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 736 (4th Cir. 1991).

Here, the Complaint, dated October 2, 2018, ECF No. 1 at 4, was stamped as processed and shipped from the JCI mailroom on October 5, 2018, ECF No. 1-6 at 2, and it was received by this Court on October 10, 2018, more than three years after Plaintiff was injured in his cell on July 4, 2015. Although it appears that Plaintiff filed a Request for Administrative Remedy regarding the matter as early as July 26, 2015, ECF No. 1-1, and that he exhausted his administrative remedies by February 23, 2016, ECF No. 1-2, Plaintiff did not file suit prior to July 4, 2018. Moreover, he has not provided any information to establish that he is entitled to

equitable tolling of the statute of limitations. Therefore, his claims against Correctional Defendants are time-barred and shall be dismissed.

### ii. Defendant Wexford's Motion for Summary Judgment

Plaintiff alleges that Defendant Wexford was negligent and deliberately indifferent to his medical needs in failing to follow through with scheduled appointments, failing to schedule follow-up appointments with offsite medical providers, and failing to order refills for his medication. He also alleges that the medical staff at JCI lacked training and that the providers were unqualified to perform their required duties.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (stating that there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (quoting *Iko v. Shreve*, 535 F.3d

225, 241 (4th Cir. 2008); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (finding that failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eight Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842) (internal quotation marks omitted).

Here, there is no evidence that the JCI medical staff were deliberately indifferent to Plaintiff's serious medical needs or that his serious medical needs were ignored. Plaintiff's medical records for the three years preceding the filing of his Complaint indicate that he was seen by medical staff, either for scheduled visits, sick calls, telemedicine, or offsite consultations,

13

at least twenty-two times. During those visits, the medical staff often reviewed his medications and attempted to address his complaints regarding pain in his left knee. Contrary to Plaintiff's assertions, nothing in the record suggests that staff failed to follow through with scheduled onsite or offsite appointments, or that they failed to order refills for his medication. Rather, it appears that certain medications, offsite consultations, and treatment such as physical therapy were not always immediately approved. However, when brought to the medical staff's attention, the requests were timely resubmitted and thereafter completed. In the three years following Plaintiff's injury in his cell, he received several surgical treatments and an assortment of pain medication in an attempt to alleviate his chronic pain. To the extent there were delays in treating Plaintiff's pain, those delays were not occasioned by a reckless disregard for his suffering. In light of the undisputed facts, Plaintiff cannot prevail on his claim of deliberate indifference to a serious medical need.

Moreover, Plaintiff makes no direct allegations against Defendant Wexford. Instead, it appears Plaintiff seeks to hold Defendant Wexford liable for the actions of its employees. It is well-established, however, that the doctrine of *respondeat superior* does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dep't of So. Servs.*, 436 U.S. 658, 691 (1978)). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the

plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, Plaintiff has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Defendant Wexford's employees. As the Court has already discussed, Plaintiff failed to show that his Eighth Amendment rights were violated in connection with his medical care. Accordingly, he has necessarily failed to demonstrate that Defendant Wexford authorized or was indifferent to any such violation. Plaintiff's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). Therefore, Defendant Wexford is entitled to summary judgment.

### III. MOTION TO APPOINT COUNSEL

After receiving Defendants' dispositive motions, Plaintiff notified the Court that he had been transferred to the Western Correctional Institution in Cumberland, Maryland and that prior to his transfer, medical staff and correctional officers at JCI retaliated against him. ECF Nos. 20, 21, 22. Plaintiff also requested appointment of counsel. ECF No. 21.

To the extent that Plaintiff intends to file suit against other individuals claiming retaliation, he may do so in a separate action. With regard to his request for counsel, the Court

may, pursuant to 28 U.S.C. § 1915(e)(1), appoint an attorney to represent any person proceeding in forma pauperis who is "unable to afford counsel." In civil actions, however, the Court appoints counsel only in "exceptional" circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read and write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008). Inherent in this analysis is that one's indigence alone is insufficient to establish exceptional circumstances. Here, Plaintiff does not proffer any other reasons demonstrating exceptional circumstances or a particular need that would require the immediate assistance of an attorney. He has adequately presented his claim, and the Court has concluded that his case need not proceed to discovery or a hearing. For these reasons, appointment of counsel is not warranted and Plaintiff's Motion to Appoint Counsel is denied.

## IV.    CONCLUSION

For the foregoing reasons, Correctional Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is granted, Defendant Wexford's Motion to Dismiss or, in the Alternative, for Summary Judgment, is granted, and Plaintiff's Motion to Appoint Counsel is denied. A separate Order shall follow.

Date: <u>March    25, 2020</u>     /s/_____
GEORGE J. HAZEL
United States District Judge